IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Richard Harrell and**
**Charlene Harrell,**

       **Plaintiffs,**

**v.**                                                   **Case No. 03-2374-JWL**

**United States of America,**

       **Defendant/Third Party Plaintiff,**

**v.**

**Patricia Ann Phillippe and**
**Roger Phillippe,** *in personam*,
**and the Glastron Motor Boat**,
**Mfg. No. 1433018, Its Engines,**
**Apparel, Tackle, Appurtenances, etc.,**
*in rem*,

       **Third-Party Defendants**.

## MEMORANDUM & ORDER

In June 2002, plaintiff Richard Harrell was tubing on the Missouri River near Atchison, Kansas when he "allided"[1] with a submerged buoy placed in the river by the United States Coast Guard, resulting in serious injury to Mr. Harrell. Thereafter, plaintiffs filed suit under the Suits in Admiralty Act (SAA), 46 U.S.C. § 741 et seq., alleging that the United States negligently failed to maintain the buoy in proper condition and failed to warn mariners that the buoy had become a

---

[1] The parties, particularly plaintiff, use the word "allided" to describe Mr. Harrell's accident in this case. According to Webster's Third International Dictionary, an "allision" is "the action of dashing against or striking upon" or "the running of one ship upon another ship that is stationary."

hazard to navigation. This matter is presently before the court on defendant's motion to dismiss plaintiffs' action for lack of subject matter jurisdiction (doc. #58) and plaintiffs' motion for summary judgment as to liability (doc. #62). As explained in more detail below, the court concludes that the actions of the Coast Guard were discretionary functions exempt from SAA liability and, thus, grants defendants' motion to dismiss. Plaintiffs' motion for summary judgment, then, is rendered moot.

The United States, as sovereign, is immune from suit unless it waives its sovereign immunity and consents to be sued. *See, e.g., United States v. Thompson*, 98 U.S. 486, 489 (1878). Absent express waiver of sovereign immunity, federal courts lack subject matter jurisdiction over suits against the United States. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). In the Suits in Admiralty Act (SAA), the United States waives its sovereign immunity from suit for maritime torts committed by its agents. *See* 46 U.S.C. Appx. § 742; Tew v. United States, 86 F.3d 1003, 1005 (10th Cir. 1996). The SAA contains no express exceptions to the waiver of sovereign immunity. In contrast, the Federal Torts Claims Act (FTCA), 28 U.S.C. § 1346(b), which waives sovereign immunity for tort claims against the United States, contains an express exception with respect to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government." *Tew*, 86 F.3d at 1005 (quoting 28 U.S.C. 2680(a)). The Tenth Circuit has held that a similar discretionary function exception is to be implied into the SAA. *See id.*

The Supreme Court has set forth a two-part test to determine whether conduct is encompassed by the discretionary function exception and thereby immunized from SAA liability.

2

*See Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (FTCA context); *Thames Shipyard & Repair Co. v. United States*, 350 F.3d 247, 254 (1st Cir. 2003) (applying *Berkovitz* test in SAA context). The court must first consider whether the challenged conduct was "discretionary," meaning whether it was "a matter of judgment or choice for the acting employee." *See Lopez v. United States*, 376 F.3d 1055, 1057 (10th Cir. 2004) (citing *Berkovitz*, 486 U.S. at 536). If the court finds that it was, the court must then consider whether it was the type of decision the discretionary function exception was designed to protect, namely one requiring the exercise of judgment based on considerations of public policy. *See id.* (citing *Berkovitz*, 486 U.S. at 536-37).

*Plaintiffs' Negligent Failure-to-Maintain Claim*

To prevail on the first prong of the *Berkovitz* test, plaintiffs must demonstrate that the challenged conduct involved "no element of judgment or choice." *See Elder v. United States*, 312 F.3d 1172, 1176-77 (10th Cir. 2002). In that regard, plaintiffs must show that the Coast Guard "violated a federal statute, regulation, or policy that is both specific and mandatory." *See id.* (citing *Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998)). Plaintiffs direct the court to no statute, regulation or policy mandating that the Coast Guard maintain buoys (or any other aids to navigation) in any particular manner. In fact, federal statutes make the maintenance of aids to navigation entirely discretionary. *See* 14 U.S.C. § 81 ("In order to aid navigation and to prevent disasters, collisions, and wrecks of vessels and aircraft, the Coast Guard *may* establish, maintain, and operate . . . aids to maritime navigation.") (emphasis added). Congress, then, has not imposed on the Coast Guard a mandatory duty to maintain buoys. Similarly, applicable Coast Guard

regulations reserve to the agency considerable discretion in maintaining aids to navigation:

> Although aids to navigation are maintained to a reasonable degree of reliability, the rigors of the marine environment and various equipment failures do cause discrepancies on occasion.
>
> The Coast Guard makes reasonable efforts to inform the navigator of known discrepancies, and to correct them within a reasonable period of time, depending upon resources available.

33 C.F.R. § 62.21(f) & (g).  Certainly, nothing in the regulations requires the Coast Guard to service a buoy within a specific period of time.  Finally, nothing in the Coast Guard's internal Aid to Navigation Manual limits the Coast Guard's discretion with respect to the maintenance of buoys.[2]  Because no statute, regulation or policy specifically prescribed a course of action for the Coast Guard to follow with respect to servicing the buoy, the challenged conduct is discretionary under the first prong of the *Berkovitz* test.  *See Elder*, 312 F.3d at 1180; *see also Smith v. United States*, 251 F. Supp. 2d 1255, 1261 (D. Md. 2003) (Coast Guard's conduct regarding maintenance of an aid to navigation involves an element of judgment or choice).

Having concluded that decisions regarding the service and maintenance of the buoy involved discretionary judgment, the court turns to the second prong of the *Berkovitz* test and considers whether that judgment is of the kind that the discretionary function exception was designed to shield.  *See Elder*, 312 F.3d at 1180-81.  The Supreme Court clarified the second prong of the

---

[2]Pursuant to the Manual, there are some circumstances under which certain aids to navigation must be serviced every two years.  The buoy at issue in this case, however, was placed on April 8, 2002 and was serviced less than three months later, on June 26, 2002.  Nothing in the manual required the Coast Guard to service the buoy with which Mr. Harrell allided any sooner than it did.

4

*Berkovitz* test in *United States v. Gaubert*, 499 U.S. 315 (1991). *See Lopez*, 376 F.3d at 1057 (citing *Gaubert*, 499 U.S. at 325). When making the second inquiry, the court is not to consider the subjective intent of the particular actor or whether he or she was animated by a concern for public policy. *Id.* (citing *Gaubert*, 499 U.S. at 325). Rather, the court must consider whether the nature of the actions taken implicate public policy concerns, or are "susceptible to policy analysis." *Id.* (citing *Gaubert*, 499 U.S. at 325). The court need not find that a government employee made a conscious decision regarding policy considerations in order to satisfy the second prong of the *Berkovitz* test. *See id.* (citing *Kiehn v. United States*, 984 F.2d 1100, 1105 (10th Cir. 1993)). The pertinent inquiry is whether the decision "implicates the exercise of a policy judgment of a social, economic, or political nature." *See Elder*, 312 F.3d at 1181 (citing *Duke v. Dep't of Agriculture*, 131 F.3d 1407, 1411 (10th Cir. 1997)).

The court readily concludes that the Coast Guard's decisions concerning whether and when to service the buoy at issue in this case were policy-based. As suggested in the pertinent regulation, and as reflected in the record before the court, decisions about whether and when to service the buoy with which Mr. Harrell allided turn on the availability and allocation of agency resources. Unlike buoys in coastal waters which have fixed positions and are maintained year-round, buoys in the Western Rivers, including the Missouri River, are placed in the river at the beginning of each navigation season (usually in late March or early April) and are removed from the river at the end of the navigation season, usually in late November. Only two Coast Guard cutters are assigned as buoy tenders in the Missouri River. The USCGC GASCONADE patrols the upper Missouri River from Sioux City, Iowa to Glasgow, Missouri and the USCGC

CHEYENNE patrols from Glasgow, Missouri to St. Louis, Missouri. Due to the length of the river and the limited number of cutters and personnel available to patrol it, buoys cannot be constantly monitored and the frequency of inspections is dictated by the availability of resources for cutters and personnel. To the extent a discrepancy is known, then a decision concerning the timing of corrective action necessarily takes into account the question of how to allocate limited resources among competing needs. In short, the second prong of the *Berkovitz* test is met. *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 820 (1984) (recognizing the efficient allocation of agency resources as a policy choice); *Tew v. United States*, 86 F.3d 1003, 1006 (10th Cir. 1996) (economic considerations, including allocation of Coast Guard resources, are a proper basis for the exercise of discretion).

Plaintiffs argue that the Supreme Court's decision in *Indian Towing Co. v. United States*, 350 U.S. 61 (1955), precludes application of the discretionary function exception in this case. *Indian Towing* involved a lawsuit alleging that the Coast Guard negligently failed to maintain a lighthouse, causing the loss of a ship. The Court held that the Coast Guard need not undertake to provide lighthouse service but, having "exercised its discretion to operate [the] light . . . and engendered reliance on the guidance afforded by the light, [the Coast Guard] was obligated to use due care to make certain that the light was kept in working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning." *Indian Towing*, 350 U.S. at 69. Ultimately, the Court held that the United States would be liable under the FTCA if the Coast Guard failed in its duty and thereby caused damage to the plaintiffs. *See id.*

Under *Indian Towing*, according to plaintiffs, the decision whether to place the buoys in the Missouri River was entirely within the Coast Guard's discretion but, having exercised that discretion to place buoys in the River, the maintenance of the buoys was not a matter of discretion. The court believes that *Indian Towing* is inapposite.  In *Indian Towing*, the discretionary function exception was not at issue because the government conceded that it did not apply in light of the Supreme Court's decision in *Dalehite v. United States*, 346 U.S. 15 (1953)–a decision that courts had interpreted to preclude application of the discretionary function exception to acts of negligence occurring at the "operational" level of government as opposed to the "policy" or "planning" level of government.  *See, e.g., Howard Routh & Sons v. United States*, 668 F.2d 454, 457-58 (10th Cir. 1981) (distinguishing "operational negligence" from "discretionary functions"); *see also Santana-Rosa v. United States*, 335 F.3d 39, 43 (1st Cir. 2003) (explaining that for the first forty years after the FTCA's enactment, an application of the discretionary function exception depended on whether the conduct occurred at a planning stage rather than the operational level).

Because the negligent conduct at issue in *Indian Towing* occurred at the operational level of governmental activity, the government conceded that the discretionary function exception did not apply and relied instead on the unsuccessful argument that the maintenance of a lighthouse was not the proper basis for liability in tort because it was a "uniquely government function."  *See id.* at 64.  In subsequent decisions, however, the Supreme Court foreclosed the distinction between high-level policy setting and low-level operational decisions.  *See United States v. Gaubert*, 499 U.S. 315, 325 (1991) ("Discretionary conduct is not confined to the policy or planning level.");

Case 2:03-cv-02374-JWL-KGS   Document 85   Filed 03/22/05   Page 8 of 13

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813 (1984) (discretionary function exception turns on the "nature of the conduct rather than the status of the actor").

Since *Gaubert*, several Circuit Courts of Appeals, including the Tenth Circuit, have expressly recognized that *Indian Towing* is simply not persuasive authority in the context of the discretionary function exception–both because the government in that case conceded that the exception did not apply and because the distinction between "operational negligence" and "discretionary functions" no longer exists. *See Thames Shipyard & Repair Co. v. United States*, 350 F.3d 247, 255 (1st Cir. 2003) (finding *Indian Towing* inapposite because the discretionary function exception was not at issue); *Ochran v. United States*, 117 F.3d 495, 505 (11th Cir. 1997) ("*Indian Towing*, however, has been severely undercut, if not altogether disavowed, by the Supreme Court in *Gaubert*."); *Black Hills Aviation, Inc. v. United States*, 34 F.3d 968, 977 (10th Cir. 1994) (finding *Indian Towing* inapposite in discretionary function context because the government conceded that the exception did not apply); *Baum v. United States*, 986 F.2d 716, 723 (4th Cir. 1993) (finding *Indian Towing* "inapplicable" in discretionary function context); *see also Alfrey v. United States*, 276 F.3d 557, 567 (9th Cir. 2002) (rejecting reliance on *Indian Towing* in discretionary function context in part because the discretionary function exception was not at issue in *Indian Towing*).

*Black Hills Aviation* arose out of the crash of a civilian aircraft on an Army missile base. 34 F.3d at 970. The plaintiffs, family members of the pilot who was killed in the crash, brought an FTCA action against the United States alleging, among other things, that the government

8

tortiously failed to investigate the cause of the crash.  *Id.*  On summary judgment, the district court concluded that the plaintiffs' claim relating to the investigation of the crash was barred by the doctrine of sovereign immunity and, more specifically, the application of the discretionary function exception.  *Id*.  On appeal, the plaintiffs relied upon the "Good Samaritan" doctrine of *Indian Towing* to support their argument that the government, having decided to perform some investigation of the crash, was obligated to perform the investigation in a non-negligent manner.  *See id.* at 977.  The Tenth Circuit rejected the plaintiffs' contention that the "Good Samaritan" doctrine applied to the case and concluded that the discretionary function exception protected the scope of the investigation.  *See id.*  As the Circuit explained:

> [T]he law of this Circuit is clear that the discretionary function exception applies even in situations where the government undertakes a duty and breaches the duty, if nothing more than negligence would be established by the breach.  We find inapposite the case relied upon by appellants, *Indian Towing Co. v. United States*, where the government was found liable under the "Good Samaritan" Doctrine.  In *Indian Towing*, the government conceded that the discretionary function [exception] did not apply and the government was found liable based upon its negligent provision of light house services.  We find no error in the district court's failure to consider the "Good Samaritan" Doctrine.

*Id*. (citations omitted).

Based on the Circuit's decision in *Black Hills Aviation*, as well as the decisions from other Circuit Courts of Appeals rejecting reliance on *Indian Towing* in the discretionary function context, the court believes that the Tenth Circuit would conclude that *Indian Towing* does not preclude application of the discretionary function exception in this case.  Thus, because the Coast Guard's decisions regarding the service and maintenance of the buoy involved discretionary judgment and because those decisions are "susceptible to policy analysis," the discretionary

9

function exception to the waiver of sovereign immunity under the Suits in Admiralty Act insulates the government from liability. *See Smith v. United States*, 251 F. Supp. 2d 1255, 1261 (D. Md. 2003) (maintenance of an aid to navigation is a discretionary function for which the United States cannot be liable).

*Plaintiffs' Failure-to-Warn Claim*

In their amended complaint, plaintiffs allege that the United States failed to provide "fair and adequate" warnings to mariners that the particular buoy with which Mr. Harrell allided had become a hazard to navigation. Plaintiffs do not dispute that defendant issued warnings with respect to the buoys in the Missouri River. At the beginning of the 2002 navigation season, the Coast Guard issued a Broadcast Notice to Mariners as follows:

> The Coast Guard has begun commissioning floating aids to navigation, buoys, on the Missouri River for the 2002 navigation season. It is anticipated the initial commissioning will be completed by 15 April. Buoys should always be used with caution. They may be carried off position by high water, accumulation of drift, or sunk by collision or other causes. High water conditions may also cause buoys to dive below the water's surface. Mariners are urged to use extreme caution when transiting this river.

This message was broadcast four times daily on VHF_FM Channel 22A for approximately two weeks. Thereafter, the message was published in the April 2002 monthly Local Notice to Mariners and the April 9, 2002 weekly Local Notice to Mariners. In addition, the Corps of Engineers chart book warns that buoys are not charted because of possible frequent shifts in their position and that buoys should be used with caution because they may be carried off position or sunk. Plaintiffs assert that these general warnings were inadequate and that the Coast Guard was

10

required to place a warning sign near the site of the buoy itself.[3]

Defendant contends that the discretionary function exception to its waiver of sovereign immunity shields it from liability for its decisions concerning how to warn mariners of buoy discrepancies. The court agrees. With respect to the first prong of the *Berkovitz* test, plaintiffs do not point to any statute, regulation or policy mandating that the Coast Guard warn mariners about the location or condition of aids to navigation in any particular fashion. The challenged conduct, then, is discretionary under the first prong. The Coast Guard's decisions about the appropriate manner in which to warn the public about potential hazards relating to buoys are also discretionary under the second prong, as those decisions implicate the exercise of a policy judgment of an economic nature, including the feasibility and costs of erecting and maintaining physical markers in light of available resources and the relative risks to the public health and safety

---

[3]Plaintiff's failure-to-warn theory is problematic in that it is undisputed that the Coast Guard had no actual knowledge of the "discrepancy" concerning the particular buoy with which Mr. Harrell allided. As discussed above, buoys are not constantly monitored or patrolled in light of scarce resources. For this reason, the Coast Guard relies on reports from the boating public regarding malfunctioning or displaced buoys and other aids to navigation. During the 2002 navigation season, the Coast Guard did not receive any discrepancy report concerning any of the buoys in the area where Mr. Harrell was tubing and there is no evidence in the record before the court that the Coast Guard had knowledge of any such discrepancy.

Plaintiffs, then, seek to hold the government liable for failing to place a warning sign at the site of a navigational aid although it is undisputed that the government had no knowledge that the navigational aid was not functioning properly. At its essence, then, plaintiffs' claim appears to be that the government "should have known" that the buoy was not functioning properly and that the Coast Guard would have known about the condition of the buoy had it monitored and maintained the buoy on a frequent, regular basis. In other words, plaintiffs' failure-to-warn claim is simply another vehicle for alleging that the Coast Guard failed to maintain the buoy.

from alternative actions.  Thus, it is clear that the Coast Guard's decision whether to place a warning sign or marker at the buoy's location was a discretionary decision that required judgment and one that was grounded in public policy considerations.  *See Theriot v. United States*, 245 F.3d 388, 399-400 (5th Cir. 1998) (United States' decision to notify public of sill's location through a Notice to Mariners, rather than by placing a warning sign near the sill, was within discretionary function exception to the SAA).

*Defendant's Third-Party Complaint*

The third-party complaint filed by the United States against the third-party defendants is based solely on a theory of contribution.  Thus, as the court has dismissed plaintiffs' complaint as to the United States, dismissal of the third-party complaint is appropriate as well.  *See Holcomb v. Allis-Chalmers Corp.*, 774 F.2d 398, 400 (10th Cir. 1985) (once district court dismissed plaintiff's cause of action, "any claim based on indemnification or contribution necessarily fell by the wayside").

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss (doc. #58) is granted and plaintiff's motion for summary judgment as to liability is moot (doc. #62).  Plaintiff's complaint is dismissed with prejudice in its entirety and defendant's third-party complaint is dismissed in its entirety with prejudice.

**IT IS SO ORDERED** this 22nd  day of March, 2005.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge